# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JAMIE SCHNIDER and TIANA JOHNSON,<br><br>       Plaintiffs,<br>  v.<br><br>PROVIDENCE HEALTH & SERVICES,<br><br>       Defendant. | <br><br><br><br><br><br><br><br>Case No. 3:15-cv-00038-SLG |

## ORDER ON MOTION TO DISQUALIFY

At Docket 12 is Defendant Providence Health & Service's ("Providence") Motion to Disqualify Plaintiffs' Counsel. Plaintiffs Jamie Schnider and Tiana Johnson filed an opposition on October 27, 2015.[1] Providence replied on November 3, 2015.[2] Oral argument on the motion was held on December 1, 2015.[3] For the reasons set forth below, the motion will be denied.

Plaintiffs Jamie Schnider and Tiana Johnson, a divorced couple, hired attorney James Wendt to represent both of them in this lawsuit against the employer of their former mental health counselors. Plaintiffs assert malpractice claims related to their treatment at the Providence Valdez Counseling Center ("PVCC") in the months leading up to the dissolution of their marriage.[4] As indicated in the record, the Plaintiffs were married on April 5, 2003, Ms. Johnson filed for divorce on April 25, 2014, and the divorce was granted

---

[1] Docket 24 (Opp.).

[2] Docket 25 (Reply).

[3] *See* Docket 35.

[4] *See* Docket 1-1 (Complaint).

on June 12, 2014.[5]

The following facts appear to be undisputed for the purposes of the current motion: Mr. Schnider, an army veteran, received individual counseling at PVCC from at least September 2007 through April 2014; Ms. Johnson received individual counseling at PVCC from at least May 2013 through September 2013.[6] The couple began marital counseling at PVCC in the summer of 2013, which apparently ended in September 2013.[7] In December 2013, Mr. Schnider began individual counseling sessions with Natalie Warner, a mental health counselor at PVCC, which continued through April 3, 2014.[8] "Maritally focused treatment" was not listed as a treatment goal for that time.[9] Rather, Mr. Schnider's treatment at that time was focused on depression, post-traumatic stress disorder, and prescription medication dependence.[10]

The parties dispute precisely how, where, when, and why these events turned irretrievably tragic. Plaintiffs assert that Mr. Schnider and Ms. Warner began a sexual relationship while they had a therapist/patient relationship, which Ms. Johnson became aware of when she discovered email communications between Mr. Schnider and Ms. Warner.[11] Providence seems to suggest that any sexual relationship between Mr.

---

[5] Docket 1-1 (Complaint) at 2, 5.

[6] Docket 1-5 (Answer) at 1–2; Docket 12 (Motion) at 2.

[7] Docket 1-1 at 2; Docket 1-5 at 2; Docket 12 at 4.

[8] See Docket 12-1 (Progress Notes) at 13–19.

[9] Docket 1-1 at 3.

[10] Docket 1-1 at 3; Docket 1-5 at 4.

[11] Docket 1-1 at 4.

Case No. 3:15-cv-00038-SLG, *Schnider, et al. v. Providence*
Order on Motion to Disqualify
Page 2 of 15

Schnider and Ms. Warner started after Mr. Schnider's April 3, 2014 final therapy session.[12] But it is undisputed that Mr. Schnider and Ms. Warner visited Hawaii together on April 7, 2014.[13] It also seems undisputed that Mr. Schnider and Ms. Warner then embarked together on a seven-month journey with stops in fifteen states.[14] That journey ended in Salt Lake City on October 9, 2014, when Mr. Schnider indicates Ms. Warner grabbed his gun from his back and used that gun to kill herself.[15]

Mr. Schnider and Ms. Johnson, through attorney James Wendt, initiated this action as co-plaintiffs in Alaska state court on February 5, 2015, alleging that: (1) Ms. Warner negligently mishandled her treatment of Mr. Schnider; (2) PVCC negligently and/or recklessly hired, trained, and supervised Ms. Warner; (3) Ms. Warner recklessly violated Alaska statutes governing professional counselors; (4) Ms. Warner's conduct negligently and/or recklessly caused Mr. Schnider and Ms. Johnson emotional distress; (5) Providence is liable for Ms. Warner's allegedly negligent and/or reckless conduct; and (6) Ms. Warner's conduct justifies punitive damages.[16] On March 10, 2015, Providence removed the action to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446.[17]

---

[12] Docket 12 (Motion) at 4.

[13] Docket 1-1 at 5; Docket 1-5 at 6; Docket 12 at 5.

[14] Docket 34-1 (Plaintiffs' Response to Defendant's First Discovery Request) at 4–8.

[15] *See* Docket 34-1 at 34–35.

[16] Docket 1-1 at 5–11.

[17] Docket 1 (Notice of Removal).

Case No. 3:15-cv-00038-SLG, *Schnider, et al. v. Providence*
Order on Motion to Disqualify
Page 3 of 15

## I. Jurisdiction

This Court has jurisdiction over this matter under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.[18]

## II. Standing

Providence seeks to disqualify opposing counsel from representing Plaintiffs in this action. Plaintiffs assert that "[i]t is questionable whether or not Defendant Providence has standing to even bring this motion."[19] The Ninth Circuit has not precluded motions to disqualify opposing counsel, but has noted that "[a]s a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification."[20] While this holding does not compel the denial of a non-client motion to disqualify opposing counsel, some courts have addressed the issue with reference to the injury, causation, and redressability requirements for Article III standing.[21] *Colyer v. Smith* articulated one possible standard, requiring: (1) a personal stake in the motion

---

[18] *See* Docket 1 at 2.

[19] Docket 24 (Opp.) at 5.

[20] *Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998) (in two separate citizen suits against two different governmental defendants, the district court denied one plaintiff's motion to disqualify the same attorneys from representing both defendants; the Circuit Court had "difficulty seeing" how plaintiff had standing to complain about opposing counsels' possible conflict of interest, but affirmed the denial "[g]iven the absence of any facts indicating that she herself was affected" and absent any suggestion from defendants or their counsel that the representation was somehow adverse); *see also Blacktail Mountain Ranch Co., LLC v. Jonas*, 611 Fed. Appx. 430, 431 (9th Cir. 2015) ("Plaintiffs lacked standing to move for disqualification because they were not clients or former clients of Defendants' counsel"); *De Dios v. Int'l Realty & Inv.*, 641 F.3d 1071, 1076–77 (9th Cir. 2011) (no legal basis for a non-client's motion to disqualify defense counsel) (citing *Kasza*, 133 F.3d at 1171); *Hechavarria v. City and Cty. of San Francisco*, 463 Fed. Appx. 632 (9th Cir. 2011) (movant lacked standing to assert a motion to disqualify because he was never in an attorney-client relationship with attorney he sought to disqualify).

[21] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Case No. 3:15-cv-00038-SLG, *Schnider, et al. v. Providence*
Order on Motion to Disqualify
Page 4 of 15

sufficient to satisfy the "irreducible constitutional minimum of Article III," and (2) an ethical breach that "so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of her claims" and "so severe that it obstructs the orderly administration of justice."[22] The alleged injury must be "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."[23]

Other courts reference the need to preserve the integrity of judgments; still others reference professional rules that create an obligation among attorneys to bring possible ethical violations to the attention of the court.[24] Alaska Rule of Professional Conduct 8.3, for example, requires that "[a] lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the appropriate disciplinary authority unless that lawyer reasonably believes that the misconduct has been or will otherwise be reported." However, using a state reporting requirement in a rule of professional conduct as a basis for federal court standing is dubious, because standing is a jurisdictional issue and "states have no power directly to enlarge or contract federal jurisdiction."[25] The Court finds that Ninth Circuit precedent disfavors motions to disqualify made by opposing counsel, and that *Colyer* sets forth a useful standard for deciding when courts should make an exception.

---

[22] 50 F. Supp. 2d 966, 971–72 (C.D. Ca. 1999).

[23] *Id.* at 973.

[24] *E.g. Coles v. Arizona Charlie's*, 973 F. Supp. 971, 973 (D. Nev. 1997); *Brown & Williamson Tobacco Corp. v. Daniel Int'l Corp.*, 563 F.2d 671, 673 (5th Cir. 1977).

[25] *Fielder v. Clark*, 714 F.2d 77 (9th Cir. 1983).

Case No. 3:15-cv-00038-SLG, *Schnider, et al. v. Providence*
Order on Motion to Disqualify
Page 5 of 15

Providence asserts a "legitimate interest" in opposing counsel's disqualification because "if there is a settlement, a dissatisfied plaintiff later can attempt to rescind the settlement by claiming insufficient information for informed consent."[26] In response to Plaintiffs' standing argument, Providence directs the Court to four non-binding cases without explaining how these demonstrate that Providence has standing in this matter.[27] As the Court reads these cases, only *Sanford v. Commonwealth of Virginia* involved a non-client party's motion to disqualify.[28] The *Sanford* court decided the motion based in part on a Virginia state rule that made it "appropriate for a court to raise the question in certain circumstances, or the conflict can be raised properly by opposing counsel."[29]

The Court finds that Providence could not meet the *Colyer* test for non-client standing to disqualify Mr. Wendt. Providence's fears of a collateral attack against a hypothetical settlement are not concrete, particularized, actual, or imminent. Moreover, Mr. Schnider and Ms. Johnson have waived potential conflicts in Mr. Wendt's representation, so there is no apparent ethical breach impacting the just and lawful determination of this case or the orderly administration of justice.[30] Thus, it would appear that Providence lacks standing to bring this motion. And yet, because *Colyer* is instructive but not binding on this Court, the Court will also consider the merits of Providence's motion.

---

[26] Docket 12 at 6–7.

[27] Docket 25 (Reply) at 5. The Court discusses these cases in more detail below.

[28] 687 F. Supp. 2d 591 (E.D. Va. 2009).

[29] *Sanford*, 687 F. Supp. 2d at 602.

[30] *See* Docket 24-1 (consent letter).

Case No. 3:15-cv-00038-SLG, *Schnider, et al. v. Providence*
Order on Motion to Disqualify
Page 6 of 15

### III. Alaska Rules of Professional Conduct

The result would not change if Providence had standing to bring a motion to disqualify Mr. Wendt. Providence asserts that Mr. Wendt's concurrent representation of Mr. Schnider and Ms. Johnson creates an irremediable concurrent conflict of interest in violation of Alaska Rule of Professional Conduct 1.7(a)(2).[31] Providence also raises concerns related to Alaska Rule of Professional Conduct 1.8(g), which addresses representation of two or more clients while making an aggregate settlement.[32]

Every attorney admitted to practice or appear in this Court must comply with the Alaska Rules of Professional Conduct except insofar as those rules are inconsistent with federal law.[33] Also, federal courts apply state law in determining matters of disqualification.[34] As relevant, Alaska Rule of Professional Conduct 1.7 provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> . . . .
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected

---

[31] Docket 12 (Motion) at 1.

[32] *See* Docket 12 at 28.

[33] D.Ak. L.R. 83(i)(1).

[34] *In re Cty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).

Case No. 3:15-cv-00038-SLG, *Schnider, et al. v. Providence*
Order on Motion to Disqualify
Page 7 of 15

> client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing.[35]

Alaska Rule of Professional Conduct 1.8(g) provides:

> A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients . . . unless each client gives informed consent, in a writing signed by the client. The lawyer's disclosure shall include the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.

Several general principles inform the Court's analysis of a potentially disqualifying conflict of interest. First, "[b]ecause of [the] potential for abuse, disqualification motions should be subjected to 'particularly strict judicial scrutiny.'"[36] Second, "in most circumstances concern for client autonomy warrants respecting a client's informed consent."[37] The Alaska Supreme Court described the standard for measuring the validity

---

[35] *See also Smiley v. Dir., Office of Workers Comp. Programs*, 984 F.2d 278, 282 (9th Cir. 1993) ("[T]he rule against representing adverse interests was designed to prevent a dishonest practitioner from committing fraud as well as to prevent an honest practitioner from having to choose between conflicting duties, or attempting to reconcile conflicting interests rather than enforcing a client's rights to the fullest extent.").

[36] *Optyl Eyewear Fashion Int'l. Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (quoting *Rice v. Baron*, 456 F. Supp. 1361, 1370 (S.D.N.Y. 1978)).

[37] Restatement (Third) of the Law Governing Lawyers § 122 (2000) reporter's note cmt. g(iv) (citing *Unified Sewerage Agency v. Jelco Inc.*, 646 F.2d 1339, 1350 (9th Cir. 1981) ("We do not find it necessary to create a paternalistic rule that would prevent the client in every circumstance from hiring a particular attorney if the client knows that some detriment may result from that choice in a later suit. Clients who are fully advised should be able to make choices of this kind if they wish to do so.")).

Case No. 3:15-cv-00038-SLG, *Schnider, et al. v. Providence*
Order on Motion to Disqualify
Page 8 of 15

of a client's consent in a criminal case in which the state moved to disqualify the public defender: "a trial judge may reject a defendant's waiver of their attorney's conflict of interest if the 'conflict is so egregious that no rational defendant would knowingly and voluntarily desire the attorney's representation.'"[38] Finally, where a particular representation may require an attorney to advocate for one client in a manner adverse to another client, "the right of an attorney to freely practice his profession must, in the public interest, give way in cases of doubt."[39]

### a. Alaska Rule of Professional Conduct 1.7

Providence asserts that Mr. Wendt's representation of Mr. Schnider and Ms. Johnson will be materially limited in violation of Rule 1.7 because Plaintiffs have "incompatible positions" in relationship to Providence based on "the comparative fault factor attributable to plaintiff Schnider."[40] In defining what constitutes impermissibly adverse interests between an attorney's clients, Providence cites to *Richard B. v. State*.[41] In that case, a father whose parental rights were terminated charged "that there was a conflict of interest because the children's mother was represented by a firm that had previously represented the father in a criminal matter that provided one of the bases for

---

[38] *Daniels v. State*, 17 P.3d 75, 83 (Alaska 2001) (quoting *United States v. Gotti*, 9 F. Supp. 2d 320, 324 (S.D.N.Y. 1998)).

[39] *Chugach Elec. Ass'n v. U.S. Dist. Court for the Dist. of Alaska at Anchorage*, 370 F.2d 441, 444 (9th Cir. 1966) (on motion by a former-client adversary, attorney who had served as general counsel and consultant for electric corporation was disqualified from acting as attorney for subsequent client who charged electric corporation with antitrust violations).

[40] Docket 12 at 20, 32.

[41] *Richard B. v. State, Dept. of Health and Soc. Servs., Div. of Family and Youth Servs.*, 71 P.3d 811 (Alaska 2003).

Case No. 3:15-cv-00038-SLG, *Schnider, et al. v. Providence*
Order on Motion to Disqualify
Page 9 of 15

termination" of his parental rights.[42] The state opposed disqualification by asserting that the parents' interests were aligned because neither wanted the state to terminate their parental rights.[43] The Alaska Supreme Court found the parents' interests materially adverse because the mother testified that she did not want the father to have contact with the children, such that the superior court should not have allowed the representation.[44] Unlike this case, *Richard B.* involved an asserted conflict in which the challenged representation was adverse to a former client, not a non-client opposing party. Providence also cites *Matter of Estate of Brandon*, in which the same attorneys represented both a decedent's estate and the personal representatives who challenged the paternity, and thus the right to a wrongful death recovery, of a child born out of wedlock.[45] The Alaska Supreme Court found a potential for conflict that the trial court had not addressed—that the firm may advocate in favor of its personal representative clients to the child's disadvantage—and remanded for a determination of whether the representation constituted an impermissible conflict of interest.[46] *Brandon* is

---

[42] *Id.* at 815.

[43] *Id.* at 819.

[44] *Id.* at 820, 833.

[45] 902 P.2d 1299 (Alaska 1995).

[46] *Id.* at 1315–18. Providence also cites *Dan A. v. State, Dept. of Health & Human Servs., Office of Children's Servs.*, No. S-13849, 2012 WL 104482 (Alaska Jan. 13, 2012) (finding no disqualifying conflict when a father appealed the termination of his parental rights arguing in part ineffective assistance of counsel based on a potential conflict of interest allegedly arising from his counsel's prior appearance as guardian ad litem for the child's cousins), an unreported case that the Court finds inapposite. The Court also finds inapposite *Sanford v. Commonwealth of Virginia*, because that case involved concurrent representation of multiple police and medical defendants who necessarily faced an apportionment of fault between each other related to excessive use of force and medical malpractice claims. 687 F. Supp. 2d 591 (E.D. Va. 2009); *see also* Docket 12 (Motion) at 21–23. Here, no one argues that Ms. Johnson may share fault, so she would not be

Case No. 3:15-cv-00038-SLG, *Schnider, et al. v. Providence*
Order on Motion to Disqualify
Page 10 of 15

distinguishable in part because the present case does not involve a trial court failure to address the potential conflict of interest or a minor whose interests may be harmed by the alleged conflict. Mr. Schnider and Ms. Johnson are adults that are presumably competent to waive any potential conflict.

Plaintiffs assert that there is no meaningful conflict in Mr. Wendt's concurrent representation of both of them in this case. They indicate that their positions align completely with regard to liability and comparative negligence, and that they are "very near agreement" regarding the state of their marriage during the relevant period.[47] Plaintiffs both signed a letter recognizing that: "differences between" them may surface during litigation; communication from one of them to Mr. Wendt cannot be kept secret from the other; there is a cap on non-economic damages and dividing any settlement could "become an issue"; and "other issues" may develop.[48] Plaintiffs acknowledge in the letter that they "have considered the possibility that conflicts may develop with joint representation and that each of [them] consent to joint representation."

The Court agrees with Plaintiffs that Alaska Rule of Professional Conduct 1.7 does not disqualify Mr. Wendt from representing both Mr. Schnider and Ms. Johnson. Mr. Wendt confirmed at the December 2015 hearing on this issue that he does not perceive

---

in the same position relative to Mr. Schnider as the defendants were to each other in *Sanford*. And both plaintiffs agree that Ms. Warner and Providence are completely responsible for the alleged malpractice. The additional cases cited by Providence in section VII of its motion are also unpersuasive because they are non-binding and distinguishable on the facts. *See* Docket 12 at 22–25.

[47] Docket 24 (Opp.) at 4.

[48] Docket 24-1 (Consent Letter).

Case No. 3:15-cv-00038-SLG, *Schnider, et al. v. Providence*
Order on Motion to Disqualify
Page 11 of 15

a significant risk that his representation will be materially limited, and that he believes he can provide competent and diligent representation to both Mr. Schnider and Ms. Johnson.[49] Providence has not demonstrated that Mr. Wendt's representation of both plaintiffs is prohibited by Alaska or federal law. Plaintiffs have not asserted claims against each other, and both have given informed consent in writing to Mr. Wendt's concurrent representation of both of them.[50]

### b. Alaska Rule of Professional Conduct 1.8

Providence also asserts that any recovery by Plaintiffs is subject to a statutory cap, and that "Rule 1.8(g) would rule out Mr. Wendt participating in an overall settlement even if the amounts were below the above referenced statutory cap."[51] Providence raises the issue of whether Mr. Wendt's concurrent representation of both Plaintiffs may provide either Mr. Schnider or Ms. Johnson with legal grounds to invalidate a later settlement.[52]

---

[49] *See also* Docket 24-2 (Wendt Aff.).

[50] These conclusions apply equally to Providence's claims that Mr. Wendt should be disqualified because the Plaintiffs could potentially disagree regarding attorney fees and costs (Docket 12 at 31), in their testimony at trial (*Id.* at 32), or with regards to confidentiality (*Id.* at 33). Mr. Wendt, Mr. Schnider, and Ms. Johnson have addressed these concerns in their consent letter (Docket 24-1) and waived any potential conflict.

[51] Docket 12 at 30.

[52] Providence seems to base this argument in part on a concurring opinion in a Supreme Court of South Dakota case in which the trial lawyers who represented multiple plaintiffs in a wrongful death lawsuit withdrew after obtaining a settlement and trial court order without determining a final distribution of the trust amount. Justice Meierhenry wrote separately "only to point out some of the problems that this case raises concerning attorney representation in the underlying litigation." With reference to South Dakota's version of Rule 1.7, the concurrence found that "[a] conflict of interest exists if there are substantially different possibilities of settlement of the claims or liabilities in question." As a result of that conflict, "the parties had to hire new lawyers to litigate the division of the trust." *See Wilcox v. Vermeulen*, 781 N.W.2d 464, 473–74 (S.D. 2010); Docket 12 (Motion) at 23–24, 30; Docket 25 at 4, 6. Mr. Wendt indicates he has followed that approach to settlement in the past. (Docket 24-2 at 2). The Court also offered at the December 2015 hearing to put any settlement on the record if any party so requests. Based on the current record, the Court finds

Case No. 3:15-cv-00038-SLG, *Schnider, et al. v. Providence*
Order on Motion to Disqualify
Page 12 of 15

Some courts have found that a deficiency in client consent justified invalidating certain settlement agreements. For example, in *Hayes v. Eagle-Picher Indus., Inc.*, cited by Providence, a lawyer indicated to the court that the clients consented to a settlement when in truth the lawyer accepted the settlement based on an arrangement among the clients that majority-rule would govern settlement acceptance decisions, and some clients objected to the settlement.[53] The court held that allowing the majority to govern the rights of the minority violated the basic tenets of the attorney-client relationship because it delegated to the attorney the power to act adverse to a client. In *Quintero v. Jim Walter Homes, Inc.*, also cited by Providence, a lawyer's clients won release from an aggregate settlement they had consented to because the lawyer obtained their consent without informing the clients of the full nature of the settlement.[54] Finally, in *Matter of Lauderdale's Guardianship*—another case cited by Providence—a trial court deviated from the apportionment of a wrongful death settlement proposed by an attorney who represented multiple beneficiaries, thereby creating an apportionment that some beneficiaries had not consented to.[55] On appeal, the appellate court found an untenable conflict of interest in the concurrent representation of multiple clients who disagreed about the apportionment of a limited recovery. To resolve the conflict, the court fashioned a

---

that if a conflict arises regarding any settlement in this case, these solutions would sufficiently address the concerns raised by Providence to date, especially given the potential for abuse of disqualification motions and concern for client autonomy referenced above.

[53] 513 F.2d 892 (10th Cir. 1975).

[54] 709 S.W.2d 225, 229 (Tex. App. 1985).

[55] 549 P.2d 42 (Wash. App. 1976).

Case No. 3:15-cv-00038-SLG, *Schnider, et al. v. Providence*
Order on Motion to Disqualify
Page 13 of 15

solution that accounted for the beneficiaries' potential interest in avoiding the cost of multiple attorneys:

> The conflcit [sic] of interest between the adult claimants may be resolved alternatively as follows. Either (1) . . . each adult claimant should be given the opportunity of retaining separate counsel, or (2) if all agree after full disclosure of the conflict that the financial costs are such that separate counsel are not warranted, then each adult client should be given the opportunity to testify as to his or her circumstances, needs, and recommended apportionment with [the attorney] conducting the examination. The proceedings should be treated as non-adversary. Counsel shall not advocate for one client to the detriment of the other without informed consent of each claimant. The court shall then exercise its discretion in making the apportionment.[56]

These cases are not binding on the Court, nor would they compel disqualification of Mr. Wendt if they were. There is no majority in a group of two plaintiffs to dictate settlement terms upon a minority, and Mr. Wendt has testified that a conflict between his clients is very unlikely and if it arose it would be addressed by hiring separate counsel.[57] Plaintiffs have provided informed consent to Mr. Wendt's concurrent representation, and the Court is not persuaded that a risk exists that Mr. Wendt would settle any aspect of this case without informing each of his clients of the full nature of the settlement. And if a conflict arises in the apportionment of a settlement, the Court, Mr. Wendt, and Providence (by citing to *Lauderdale*) have all provided viable options that would minimize—if not eliminate—the risk of a later collateral attack by Mr. Schnider or Ms. Johnson. Accordingly, Alaska Rule of Professional Conduct 1.8(g) does not provide a basis to disqualify Mr. Wendt.

---

[56] *Id.* at 46.

[57] Docket 24-2 (Wendt Aff.).

Case No. 3:15-cv-00038-SLG, *Schnider, et al. v. Providence*
Order on Motion to Disqualify
Page 14 of 15

For the foregoing reasons, IT IS ORDERED that the motion at Docket 12 is DENIED.

DATED this 12th day of January, 2016 at Anchorage, Alaska.

<u>Sharon L. Gleason</u>
UNITED STATES DISTRICT JUDGE

Case No. 3:15-cv-00038-SLG, *Schnider, et al. v. Providence*
Order on Motion to Disqualify
Page 15 of 15