# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JAMIE SCHNIDER and TIANA JOHNSON,<br><br>             Plaintiffs,<br><br>vs.<br><br>PROVIDENCE HEALTH & SERVICES,<br><br>             Defendant. | Case No. 3:15-cv-00038-SLG |

## **ORDER**

Before the Court at Docket 116 is Providence's Motion for Sanctions for Destruction of Relevant Evidence. At Docket 129, Plaintiffs opposed; at Docket 133, Providence replied. An evidentiary hearing on the motion was held on February 12, 2018, at which Plaintiff Jamie Schnider testified.[1]

*I.    Background*

At issue are the appropriate sanctions, if any, related to Mr. Schnider's complete deletion of all entries in his Facebook account after April 10, 2014. Plaintiffs' lawsuit against Providence arises from the fact that Natalie Warner was Mr. Schnider's mental health therapist. Mr. Schnider and Ms. Warner began a sexual relationship in approximately April 2014. Natalie Warner died on October 9, 2014 of a self-inflicted gunshot wound. It is undisputed that Mr. Schnider permanently deleted his Facebook

---

[1] *See* Docket 142 (Minute Order). At Docket 127 is Providence's Request for a Decision on Motion for Sanctions. No response was filed. That motion is effectively granted by this order.

account at some point after Ms. Warner's death, and after he had hired an attorney to represent him in this case. Mr. Schnider first communicated with attorney James Wendt's law office on October 17, 2014. He could not recall when he deleted the account, but testified it was certainly within a year of Ms. Warner's death, and probably within six months. This lawsuit was filed in March 2015.

At the evidentiary hearing, Mr. Schnider testified that Tiana Johnson, his former spouse, was a paralegal at a law firm. Mr. Schnider testified that he was well aware in June 2014 that Ms. Johnson was considering a lawsuit against Providence. He was cooperative with Ms. Johnson and provided extensive electronically stored information to Ms. Johnson at that time. He testified that Ms. Johnson spent a great deal of time telling him why a lawsuit against Providence was important, and that he then gave her everything she wanted to pursue it, including full access to his Facebook account at that time. He also testified that he was a frequent and consistent user of Facebook throughout the time he was travelling with Ms. Warner from April through October 2014. He described himself as "the Facebook kid." Mr. Schnider testified that he also used instant messaging through his Facebook account. And he acknowledged that if one were able to read Mr. Schnider's Facebook account for the period in question, one would be able to assess Mr. Schnider's emotional health on a day-to-day basis. He said that after Ms. Warner's death, whatever his Facebook account would have contained would have shown the state of his mental health at that time. Providence introduced records that Mr. Schnider called eight different law firms several hours prior to Ms. Warner's death on October 9, 2014. Mr. Schnider testified that he had no memory of making those phone calls and no idea why those phone

Case No. 3:15-cv-00038-SLG, *Schnider et al. v. Providence Health & Services*
Order re Motion for Sanctions
Page 2 of 6

calls would have been made at that time, but he was certain that it was not in connection with a possible lawsuit by him against Providence. Providence also introduced a letter written by attorney Wendt on behalf of Mr. Schnider to Providence dated November 17, 2014.

Mr. Schnider testified that he deleted his Facebook account because he "couldn't stand to look at Natalie every time I opened it." He added that he deleted the account because he "wanted the pain gone away from me." He deleted everything except "three or four pictures" that he couldn't get rid of. After Ms. Warner's death, Mr. Schnider indicated that he spent a significant portion of his time in several psychiatric intensive care units. He never provided his attorney with any material from the Facebook account before he deleted it. But the Court finds, based on Mr. Schnider's testimony, that he was made aware by Tiana Johnson by no later than June 2014 that his Facebook postings and other social media were relevant materials for any future litigation against Providence.

Mr. Schnider also testified that when he deleted the account, it was not done with any intent to prevent Providence from getting access to it. He also testified that he can't remember very much at all of what happened in the months and even years after Ms. Warner's death.

*II. Discussion*

Federal Rule of Civil Rule 37(e) addresses the failure to preserve electronically stored information. It provides as follows:

Case No. 3:15-cv-00038-SLG, *Schnider et al. v. Providence Health & Services*
Order re Motion for Sanctions
Page 3 of 6

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Here it is undisputed that Mr. Schnider's Facebook account should have been preserved. Instead, Mr. Schnider permanently deleted the account after he had had retained counsel, and, more likely than not, after he had commenced this litigation seeking emotional distress damages from Providence. The Court also finds that Mr. Schnider failed to take reasonable steps to preserve the account—to the contrary, he intentionally and permanently deleted the information. The question is whether the consideration of sanctions under subsection (e)(2) is warranted, which requires a "finding that the party acted with the intent to deprive another party of the information's use in the litigation."

The Court finds Mr. Schnider's testimony that he deleted the account solely because it caused him pain and emotional distress to be not fully credible. While his own emotional response to the Facebook postings may have been one reason for the

Case No. 3:15-cv-00038-SLG, *Schnider et al. v. Providence Health & Services*
Order re Motion for Sanctions
Page 4 of 6

permanent deletion, the Court is fully persuaded that Mr. Schnider was also motivated to permanently delete the account because it would deprive Providence of that information in the litigation. The Court bases this finding on the entirety of the evidence before the Court on this issue, including: (1) the fact that Mr. Schnider knew by no later than June 2014 that Ms. Johnson, a paralegal, was contemplating a lawsuit against Providence and that his Facebook postings were relevant to that case; (2) Mr. Schnider's retention of counsel promptly after Ms. Warner's death, and the Court's expectation that an experienced attorney such as Mr. Wendt would be very likely to inform his client of the duty to preserve evidence; (3) the content of the emails that were preserved from April 2014 in which Mr. Schnider took responsibility for the sexual relationship that had developed between him and Ms. Warner; and (4) Mr. Schnider's demeanor and professed complete lack of memory following Ms. Warner's death, which lack of memory is inconsistent with his emphatic statement that he did not intend to deprive Providence of the Facebook information when he permanently deleted it.

In light of the foregoing, the Court finds that Mr. Schnider acted with the intent to deprive Providence of his Facebook information for use in this litigation.

### III. Conclusion

Based on the foregoing, the Motion for Sanctions at Docket 116 is GRANTED.

IT IS FURTHER ORDERED that within 14 days of the date of this order, Providence shall file a supplemental motion that addresses the nature of the sanctions it

Case No. 3:15-cv-00038-SLG, *Schnider et al. v. Providence Health & Services*
Order re Motion for Sanctions
Page 5 of 6

is seeking pursuant to Civil Rule 37(e), to which Mr. Schnider may file a response and Providence a reply, consistent with the time limits specified in Local Rule 7.1(f).[2]

DATED at this 9th day of March, 2018 at Anchorage, Alaska.

                                            */s/ Sharon L. Gleason*
                                         UNITED STATES DISTRICT JUDGE

---

[2] As the advisory committee's note to the 2015 amendment to Fed. R. Civ. P. 37(e)(2) explains, "[t]he remedy should fit the wrong, and the severe measures authorized by this subdivision should not be used when the information was lost is relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss." Here, however, given Mr. Schnider's professed lack of memory, the lost Facebook information could have been quite important to this litigation.

Case No. 3:15-cv-00038-SLG, *Schnider et al. v. Providence Health & Services*
Order re Motion for Sanctions
Page 6 of 6